IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GEORGE KOLBER, ET AL.,

    Plaintiffs,

v.

BODY CENTRAL CORP. and JULIE DAVIS,

    Defendants.

Civil Action No. 11-731-RGA

---

Sheldon K. Rennie, FOX ROTHSCHILD, LLP, Wilmington, DE; Michael J. Canning (argued), Matthew N. Fiorovanti, GIORDANO, HALLERAN & CIESLA, Red Bank, NJ.

    Attorneys for Plaintiffs.

Robert W. Whetzel, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Scott D. Richburg (argued), FOLEY & LARDNER, LLP, Jacksonville, FL.

    Attorneys for Defendants.

July 30, 2012

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court are Defendants' Motions to Dismiss (D.I. 14, 17). The motions seek dismissal of all claims. The matter is fully briefed. (D.I. 15, 18, 22-23, 25-26).

The Plaintiffs in their Complaint (D.I. 1) assert three claims against both Body Central and Ms. Davis for tortious interference with prospective business advantage, negligence, and equitable fraud. The Plaintiffs assert an additional three claims against only Body Central for violation of 6 *Del. C.* § 8-401, breach of fiduciary duty, and conversion and trover.

## I. Factual Allegations

The relevant facts alleged in the complaint are: Mr. Kolber owned shares of common stock of Body Central. (D.I. 1 at ¶ 17). The shares contained a restrictive legend, which provided that the securities represented by the certificates have not been registered under the Securities Act of 1933, as amended, and may not be sold, transferred, pledged, hypothecated or otherwise disposed of in the absence of (i) an effective registration statement for such securities under said act, or (ii) an opinion of counsel that such registration is not required. (*Id.*, ¶ 18). The shares were also subject to a "lock-up agreement," which precluded the holders from selling, announcing the intention to sell, or transferring any shares of Body Central's stock before the expiration of the lock-up period. (*Id.*, ¶ 27). The lock-up period initially was scheduled to expire May 11, 2011 (*id.*, ¶ 30), but was extended to May 31, 2011. (*Id.*, ¶ 31).

On May 19, 2011, counsel for Plaintiffs e-mailed Ms. Davis, general counsel for Body Central, to: (i) obtain confirmation that the lock-up period expired May 31, 2011; (ii) advise that Plaintiffs "wished to start the process to have the restrictive legends removed from [their] share certificates"; and (iii) ask as to whom Plaintiffs should contact to have legends removed. (*Id.*, ¶

2

35). Ms. Davis responded on May 23, 2011 and confirmed that the lock-up period expired on May 31, 2011 and advised that she was the appropriate contact person. (*Id.*, ¶ 36). Plaintiffs' counsel followed up with Ms. Davis on May 24, 2011 to ask about the specific procedures for obtaining the removal of the restrictive legends. (*Id.*, ¶ 37). It is undisputed that Ms. Davis did not respond to the May 24, 2011 e-mail. (D.I. 1, ¶ 42, D.I. 15 at 5).

On the morning of May 31, 2011, Plaintiffs' counsel again e-mailed Ms. Davis and advised that Plaintiffs desired to have the restrictive legends removed from their share certificates and asked that Ms. Davis respond to the questions in the May 24 e-mail. (D.I. 1, ¶ 46). At 3:59 pm on May 31, 2011, Body Central's outside counsel, Foley & Lardner, issued an opinion to the transfer agent, which provided that the restrictive legend could be removed from the shares pursuant to SEC Rule 144.[1] (*Id.*, ¶¶ 47-48). Because the opinion was not issued until 3:59 pm, one minute before the close of trading, Plaintiffs allege that they were not in a position to sell their shares on May 31, 2011 and that Body Central "acted in bad faith and with an improper motive." (*Id.*, ¶ 45). Plaintiffs further allege that certain insiders at Body Central were notified that an opinion was forthcoming and, accordingly, they were able to sell their shares on May 31, 2011. (*Id.*, ¶ 59). The sale by the insiders of a significant number of shares on May 31, 2011 diluted the market and caused the stock price to decline. (*Id.*, ¶ 58). Plaintiffs allege that they were unable to sell their shares until June 10, 2011, resulting in a significant loss in the value of the shares. (*Id.*, ¶ 75).

## II. Decision

---

[1] Rule 144 is a "safe harbor" that permits public resale of restricted securities if certain conditions are met. 17 C.F.R. § 230.144.

3

Body Central and Ms. Davis move to dismiss all claims against them. For the reasons set forth below, the Court concludes that the allegations fail to state a claim and, accordingly, grants Defendants' Motions to Dismiss.

### A.  Violation of 6 *Del. C.* § 8-401 (against Body Central)

Plaintiffs first assert a claim against Body Central for violation of 6 *Del. C.* § 8-401, which provides in part, that, "[where] an issuer is under a duty to register a transfer of a security, the issuer is liable . . . for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." 6 *Del. C.* § 8-401(b). Courts have construed the term "register the transfer" to "include those ministerial acts that normally accompany such registration, including, where applicable, the issuance of a new certificate." *See Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986). This is because "where the stock is restricted, the issuance of a new, clean certificate to the transferor is normally the essential first step" in the transfer process. *Id.* Thus, a wrongful refusal or unreasonable delay in issuing new share certificates has been held to be actionable under 6 *Del. C.* § 8-401(b) under the theory that the issuance of new share certificates is a ministerial act essential to the registration of a transfer of the stock. *See id.*

Here, Plaintiffs allege that Body Central violated 6 *Del. C.* § 8-401 because "Body Central wrongfully and/or negligently failed to reasonably and timely respond to Plaintiffs' request regarding the removal of legends or advise Plaintiffs as to the manner in which Body Central intended to effectuate the necessary actions to remove the restrictive legends . . . prior to May 31, 2011." (D.I. 1, ¶ 83). In effect, Plaintiffs allege that Ms. Davis' failure to respond to their counsel's e-mails before Body Central caused its outside counsel to issue a Rule 144

4

opinion letter to the transfer agent when the lock-up period expired somehow constitutes an "unreasonable delay in registration" under the statute. Plaintiffs, however, do not allege that Body Central or Ms. Davis delayed in registering the transfer once Plaintiffs actually requested that the restrictive legend be removed on May 31, 2011 and cite no authority for the proposition that responding to an e-mail is an essential predicate act to registration of a transfer. The only "essential first step" that had to occur before the restrictive legends could be removed was that a Rule 144 opinion letter had to be provided to the transfer agent. Plaintiffs' own allegations establish that Body Central caused its outside counsel to provide a Rule 144 opinion letter to the transfer agent on the same day Plaintiffs requested it, the day the lock-up period expired. Therefore, there was no "unreasonable delay," and Plaintiff fails to state a claim for violation of 6 *Del. C.* § 8-401.

Plaintiffs' claim under 6 *Del. C.* § 8-401 also fails because Plaintiffs cannot establish any "legally cognizable loss because of this [alleged] delay." *See Loretto Literary & Benevolent Institution v. Blue Diamond Coal Co.*, 444 A.2d 256, 260 (Del. Ch. 1982). Although Plaintiffs allege that they "needed to obtain an opinion from the Company's counsel issued to the Company's transfer agent," the restrictive legend only required that a Rule 144 opinion be issued by counsel, not necessarily Body Central's counsel.[2] (D.I. 16-1 at 7). Specifically, the legend provides: "If requested by the company, the holder of such shares must provide to the company

---

[2] The stock certificates were attached to the Declaration of Julie Davis, Esq. (D.I. 16), filed in support of Body Central's Motion to Dismiss. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiffs' counsel stated at oral argument that the stock certificates were properly considered with the Motion to Dismiss. (D.I. 29 at 4).

5

an opinion of counsel satisfactory to the company that any such sale, offer for sale, pledge or hypothecation of the shares does not require registration under such act and any applicable state securities laws." (*Id.*).

In addition, Plaintiffs were not required to have a Rule 144 opinion in hand to contract to sell their shares on May 31, 2011. Instead, the Rule 144 opinion was only required by the transfer agent to actually transfer the restricted shares to a third party to settle the sale. *See* 17 C.F.R. § 240.15c6-1 (the party selling securities generally has three business days to settle the sale by delivering the securities certificate). Thus, even without a Rule 144 opinion in hand, Plaintiffs were free to sell their shares at any time upon expiration of the lock-up period on May 31, 2011, as long as they provided a Rule 144 opinion letter to the transfer agent in time to comply with the three business day settlement rule. Plaintiffs, therefore, fail to state a claim against Body Central under 6 *Del. C.* § 8-401.

Accordingly, Count 1 of the Complaint is dismissed.

## B. Tortious Interference with Prospective Business Advantage (against Body Central and Ms. Davis)

Plaintiffs also assert a claim against Body Central and Ms. Davis for tortious interference with prospective business advantage. The elements of a claim for tortious interference with prospective business advantage are: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980). Plaintiffs make a number of allegations in support of their claim for tortious interference. First, Plaintiffs asked Ms. Davis when the lock-up period expired and asked for information regarding

6

the process to remove the restrictive legend. Second, Body Central advised certain insiders before May 31, 2011 that it intended to arrange for the issuance of a legal opinion but failed to similarly advise Plaintiffs of this fact. Third, the legal opinion was issued at 3:59 pm on May 31, 2011, preventing Plaintiffs from selling their shares on May 31. Fourth, the insiders sold a larger than usual number of shares on May 31, 2011, causing a decline in the stock value.

From these allegations, Plaintiffs ask the Court to infer that Body Central knew Plaintiffs wished to sell "but deprived them of the opportunity to do so while assisting the Insiders." (D.I. 22 at 15). The factual allegations, however, do not support such an inference. The Plaintiffs do not allege that they actually told Body Central or Ms. Davis that they intended to sell their shares immediately upon expiration of the lock-up. At most, they allege that they inquired about the expiration of the lock-up period and the process to remove the legends. Moreover, Plaintiffs waited a week to follow up with Ms. Davis when she failed to respond to the May 24 e-mail. Plaintiffs' allegation that "[Body Central] and Ms. Davis knew or should have known that Plaintiffs intended to sell their shares on May 31, 2011" is conclusory and not supported by Plaintiffs' factual allegations.

Furthermore, Plaintiffs' claim for intentional interference also fails because Plaintiffs cannot establish that their alleged damages were proximately caused by Body Central's alleged interference. Plaintiffs were able to sell their shares at any time upon the expiration of the lock-up period on May 31, 2011. Therefore, Plaintiffs have not suffered any damages proximately caused by any alleged failure of Body Central.

Accordingly, Count 2 of the Complaint is dismissed.

C.  **Breach of Fiduciary Duty (against Body Central)**

7

Plaintiffs conceded in their Answering Brief (D.I. 22 at 2, n.1) and at oral argument (D.I. 29 at 27-28) that they could not maintain a claim for breach of fiduciary duty against Body Central. Accordingly, Count 3 of the Complaint is dismissed.

### D. Negligence (against Body Central and Ms. Davis)

Plaintiffs also assert a claim for common law negligence against Body Central and Ms. Davis. Specifically, Plaintiffs allege that "Body Central and Ms. Davis breached the duty owed to Plaintiffs by failing to reasonably and timely advise as to the manner in which Body Central intended to effectuate the necessary actions to remove the restrictive legends contained on the share certificates owned by Plaintiffs prior to May 31, 2011." (D.I. 1, ¶ 101).

Defendants argue that 6 *Del. C.* § 8-401 displaces any common law claim for negligence and, therefore, Plaintiffs cannot maintain a claim for negligence against them. This is a novel issue as no Delaware court has addressed specifically whether 6 *Del. C.* § 8-401 displaces the common law. Delaware law provides:

> Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

6 *Del. C.* § 1-103(b). The Delaware Supreme Court, thus, has held that a UCC section setting out a "[c]ustomer's duty to discover and report unauthorized signature or alteration" "pre-empted common law duties" and, therefore, the action for negligence failed. *Mahaffy & Assocs., Inc. v. Long*, 2003 WL 22351271, at *6 (Del. 2003).

The Colorado Supreme Court recently held that Colorado's analogous provision to 6 *Del.*

8

C. § 8-401 displaced common law claims. *Clancy Sys. Int'l v. Salazar*, 177 P.3d 1235, 1236 (Col. 2008). In *Clancy*, the Colorado Supreme Court held that *Colo. Rev. Stat.* § 4-8-401 "imposes liability on an issuer of securities for loss resulting from its unreasonable delay in removing a restrictive legend for a reissued certificate, but also displaces common law remedies for the same loss." *Clancy*, 177 P.3d at 1239. The Court noted that Colorado had adopted U.C.C. Section 1-103 and, therefore, "expressly indicated its intent that pre-existing principles of law and equity have continuing vitality and be treated as supplementing the code, *unless* they have been 'displaced' by any of its particular provisions." *Id.* at 1237 (citing *Colo. Rev. Stat.* § 4-1-103(b)).[3]

Here, any duty that Body Central or Ms. Davis owed to Plaintiffs to remove the restrictive stock legends is the statutory duty set forth in 6 *Del. C.* § 8-401. I find the Colorado Supreme Court's holding in *Clancy* persuasive and conclude that 6 *Del. C.* § 8-401 displaces any common law claim for negligence in this instance.[4]

Accordingly, Count 4 of the Complaint is dismissed.

### E. Equitable Fraud (against Body Central and Ms. Davis)

Plaintiffs fail to state a claim for equitable fraud against either Body Central or Ms. Davis. As the Delaware Court of Chancery stated in *Ameristars Casinos, Inc. v. Resorts Int'l Holdings, LLC*, 2010 WL 1875631 (Del. Ch. May 11, 2010):

---

[3] Colorado's version of UCC Section 1-103 differs slightly from Delaware's version but is substantively equivalent. *Compare Colo. Rev. Stat.* § 4-1-103 and 6 *Del. C.* § 1-103.

[4] Because I conclude that 6 *Del. C.* § 8-401 displaces any common law claim for negligence, it is unnecessary for me to reach the issue of whether Plaintiffs would have successfully stated a claim for negligence based on the facts alleged.

9

> [E]quitable fraud can only be applied in those cases in which one of the two fundamental sources of equity jurisdiction exist: (1) an equitable right founded upon a special relationship over which equity takes jurisdiction, or (2) where equity affords its special remedies, e.g., rescission, or cancellation; where it is sought to reform a contract . . . or to have a constructive trust decreed.

*Id.* at *12 (internal quotations and citations omitted). Plaintiffs are not seeking equitable relief. Instead, Plaintiffs assert the existence of a "special relationship" between Body Central and Plaintiffs. Plaintiffs, however, have conceded that Body Central owes no fiduciary duties to its shareholders, and the Complaint otherwise fails to allege any special relationship upon which a claim for equitable fraud could be brought. Therefore, Plaintiffs fail to state a claim for equitable fraud against Body Central.

Similarly, Ms. Davis owed no fiduciary duties to Plaintiffs. Plaintiffs instead assert that a "special relationship" was formed between Ms. Davis and Plaintiffs when she identified herself as the person responsible for answering questions about removing the restrictive legends. (D.I. 23 at 9). Plaintiffs fail to cite any authority in support of this proposition. In the absence of any fiduciary duties owed by Ms. Davis to Plaintiffs, the fact that Ms. Davis identified herself as the contact person does not create the sort of "special relationship" necessary to support a claim of equitable fraud.

Accordingly, Count 5 of the Complaint is dismissed.

### F. Conversion and Trover (against Body Central)

Finally, Plaintiffs also assert a claim against Body Central for conversion. "A stockholder's shares are converted by 'any act of control or dominion . . . without the [stockholder's] authority or consent, and in disregard, violation, or denial of his rights as a

10

stockholder of the company.'" *Arnold v. Society for Savings Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).

Plaintiffs allege that they "were unable to sell . . . the shares . . . through May 31, 2011 and thereafter." (D.I. 1, ¶ 112). However, as already discussed, Plaintiffs were able to sell their shares after the lock-up expired on May 31, 2011. The fact that Plaintiffs may not have been aware that they had the legal right to sell their shares does not mean that Body Central exercised dominion or control over Plaintiffs' shares. Thus, Plaintiffs fail to state a claim against Body Central for conversion.

Accordingly, Count 6 of the Complaint is dismissed.

## III. Conclusion

Plaintiffs requested that if the motions to dismiss were granted, they be given leave to amend. (D.I. 29 at 30-31). I am dubious that Plaintiffs can successfully amend their allegations, but I will give them 2 weeks to do so.

For the reasons stated above, the Defendants' Motions to Dismiss are granted and the Complaint is dismissed without prejudice. An appropriate order will be entered.