IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GEORGE KOLBER, ET AL.,

Plaintiffs,

v.

BODY CENTRAL CORP. and JULIE DAVIS,

Defendants.

Civil Action No. 11-731-RGA

---

Carl D. Neff, Esq., FOX ROTHSCHILD, LLP, Wilmington, DE; Michael J. Canning, Esq. Matthew N. Fiorovanti, Esq. GIORDANO, HALLERAN & CIESLA, Red Bank, NJ.

Attorneys for Plaintiffs.

Robert W. Whetzel, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Scott D. Richburg, Esq., FOLEY & LARDNER, LLP, Jacksonville, FL.

Attorneys for Defendants.

September 18, 2013

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the court is Defendants' motion to dismiss the first amended complaint. Plaintiffs filed their initial complaint on August 18, 2011. (D.I. 1). Defendants moved to dismiss (D.I. 14, 17), and the Court granted the motion, dismissing the complaint without prejudice. (D.I. 30). *See Kolber v. Body Central Corp.*, 2012 WL 3095324 (D. Del. July 30, 2012). Plaintiffs filed an amended complaint on August 13, 2012. (D.I. 32). In the Amended Complaint, plaintiffs assert five claims against Body Central: violation of 6 *Del. C.* § 8-401, conversion and trover, breach of implied-in-fact contract, tortious interference with implied contractual relations, and respondeat superior. Plaintiffs assert an additional five claims against both Body Central and Ms. Davis: tortious interference with prospective business advantage, negligence, equitable fraud, securities fraud, and legal fraud.

Defendants have moved to dismiss the Amended Complaint. (D.I. 35). The matter is fully briefed (D.I. 36, 39, 42). For the reasons that follow, the Court will grant defendants' motion to dismiss the Amended Complaint and dismiss plaintiffs' claims with prejudice.

## I. FACTUAL ALLEGATIONS

The relevant facts largely have not changed from the original complaint. Mr. Kolber owned 176,858 shares of common stock of Body Central individually and beneficially through the other two Plaintiffs. (D.I. 32 at ¶¶ 2, 21). The shares contained a restrictive legend, which provided that the securities had not been registered under the Securities Act of 1933. (*Id.* at ¶ 52). The shares were also subject to a "lock-up agreement," which prohibited the holder from selling, announcing the intention to sell or transferring any shares of Body Central's stock before the expiration of the lock-up period. (*Id.* at ¶¶ 46-47). The lock-up period initially was

scheduled to expire May 11, 2011 but was extended to May 31, 2011. (*Id.* at ¶¶ 53, 55).

On May 19, 2011, Plaintiffs' counsel e-mailed Ms. Davis, general counsel for Body Central, to confirm that the lock-up period would expire May 31, 2011 and to advise that they "wished to start the process to have the restrictive legends removed from [their] share certificates." (*Id.* at ¶ 82). Plaintiffs' counsel also inquired about the appropriate contact person regarding legend removal. (*Id.*). Ms. Davis responded on May 23, 2011 and confirmed that the lock-up period would expire on May 31, 2011 and advised that she was the appropriate contact person. (*Id.* ¶¶ 91-92). Plaintiffs' counsel followed up the next day to ask about the specific procedures for obtaining the removal of the restrictive legends. (*Id.* at ¶ 103). It is undisputed that Ms. Davis did not respond to the May 24, 2011 e-mail. (*Id.* at 105; D.I. 15 at 5).

At 10:56 am on May 31, 2011, Plaintiffs' counsel again e-mailed Ms. Davis and advised that Plaintiffs desired to have the restrictive legends removed from their share certificates and asked that Ms. Davis respond to the questions in the May 24 e-mail. (D.I. 32 at ¶ 110). Ms. Davis did not respond to that e-mail. However, Foley & Lardner, Body Central's outside counsel, issued an opinion to the transfer agent, which provided that the restrictive legend could be removed from the shares pursuant to SEC Rule 144. (*Id.* at ¶ 132). Because the opinion was not issued until one minute before the close of trading and without any prior indication that it would be forthcoming, Plaintiffs allege that they were "never in a position to sell their shares on May 31, 2011." (*Id.* at ¶ 141). Plaintiffs allege Body Central stock was selling for $23.75 to $25 per share on May 31, 2011. (*Id.* at ¶¶ 12-15). Plaintiffs sold their shares on June 10, 2011, on which day the closing price was $20.39. (*Id.* at ¶¶ 164-65). Plaintiffs further allege that, as a result of Body Central's failure to respond to Plaintiffs' requests for information and Plaintiffs'

inability to sell their shares immediately upon expiration of the lock-up period, Plaintiffs suffered a significant loss in the value of their shares. (*Id.* at ¶¶ 151, 166).

## II. DECISION

### A. Violation of 6 *Del. C.* § 8-401 (against Body Central)

In the first count of the Amended Complaint, Plaintiffs re-allege a claim for violation of 6 *Del. C.* § 8-401. 6 *Del. C.* § 8-401 provides, in part, that "[where] an issuer is under a duty to register a transfer of a security, the issuer is liable . . . for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer." 6 *Del. C.* § 8-401(b). As the Court stated in its July 30, 2012 opinion, the only "essential first step" that had to occur before the restrictive legends could be removed was that a Rule 144 opinion letter be provided to the transfer agent. *See Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986).

As in the original Complaint, Plaintiffs still "do not allege that Body Central or Ms. Davis delayed in registering the transfer once Plaintiffs actually requested that the restrictive legend be removed on May 31, 2011." (D.I. 30 at 5). Plaintiffs instead continue to argue that responding to an e-mail is an essential predicate to registration of a transfer but cite no legal authority for this proposition. The only cite they provide is to a publication on the SEC's website, which states that "[t]o begin the legend removal process, an investor should contact the company that issued the securities, or the transfer agent for the securities, to ask about the procedures for removing a legend." U.S. Securities and Exchange Commission, *Rule 144: Selling Restricted and Controlled Securities*, http://www.sec.gov/investor/pubs/rule144.htm (last visited Sept. 18, 2013). The SEC publication expressly states that "[i]t is neither a legal interpretation nor a statement of SEC policy" and further states that "[s]tate law, not federal law, covers disputes

about the removal of legends." (*Id.*). The SEC publication, therefore, is not relevant to this issue and does not change the Court's determination that responding to Plaintiffs' e-mails was not an "essential first step" that had to occur before the restrictive legends could be removed.

The only "essential first step" that had to occur before the restrictive legends could be removed was that a Rule 144 opinion letter had to be provided to the transfer agent. *See Bender*, 514 A.2d at 1115. The allegations in the Amended Complaint establish that Body Central caused its outside counsel to provide a Rule 144 opinion letter to the transfer agent on the same day Plaintiffs requested it. Therefore, there was no "unreasonable delay."

Plaintiffs also argue that, even if Body Central's duties arose only after Plaintiffs advised on May 31 that they wanted the legends removed, "Defendants' delay in notifying Plaintiffs that the letter was forthcoming until 3:59 pm was unreasonable." (D.I. 39 at 6-7). As the Court has already ruled, there was no duty for Defendants to respond to Plaintiffs' inquiries before the Rule 144 opinion was issued. There was no unreasonable delay.

Accordingly, Count 1 of the Amended Complaint is dismissed.

**B. Tortious Interference with Prospective Business Advantage (against Body Central and Ms. Davis)**

In the second count of the Amended Complaint, Plaintiffs assert a claim for tortious interference with prospective business advantage. Plaintiffs' allegation that "Defendants knew, or should have known, that Plaintiffs intended to sell their shares of common stock of Body Central following the expiration of the lock-up period at the opening of the market for trading on May 31, 2011" remains conclusory and not supported by the factual allegations. (D.I. 32 at ¶ 181). While alleging that Defendants knew that they intended to sell their shares, they also allege

that Plaintiffs did not know whether they would do so. "Plaintiffs did not unequivocally state that they intended to sell their shares immediately on May 31, 2011, as they could not know what the market conditions would be until that date." (D.I. 32 at ¶ 84; *see also id.* at ¶ 87). Plaintiffs' allegations are contradictory.

Plaintiffs rely on slightly different allegations in support of this claim than they did in the original complaint. First, Plaintiffs had previously sold shares as soon as those shares were no longer restricted at the same time as the other selling shareholders. (*Id.* at ¶ 181). Second, Defendants knew the insiders were selling their shares as of the opening of trading on May 31, 2011. (*Id.*). Third, Plaintiffs' counsel requested information concerning the process to remove the restrictive legend. (*Id.*). Fourth, the company's outside counsel stated on two previous occasions that counsel "assumed" Plaintiffs would sell their stock at the same time as the other selling shareholders in the two previous transactions. (*Id.*). Fifth, shares of Body Central common stock were trading at near record high prices. (*Id.*).

Again, the Plaintiffs ask the Court to infer from these allegations that Body Central and Ms. Davis knew that Plaintiffs intended to sell their shares at the opening of trading on May 31, 2011. Plaintiffs' new allegations do not support such an inference. Plaintiffs still do not allege, and evidently cannot allege, that they told Body Central or Ms. Davis that they intended to sell their shares immediately upon expiration of the lock-up period or even that they wanted to be in a position to sell their shares at that time.[1] Even on May 31, 2011, the day Plaintiffs allege they

---

[1] Indeed, the lock-up agreement required such notice. Specifically, the lock-up agreement provided:

> [P]rior to engaging in any transaction or taking any other action that is subject to the terms of [the lock-up agreement] during the

wanted to sell their shares, Plaintiffs did not communicate that they intended to sell their shares and did not contact Defendants until almost two hours after trading opened. (D.I. 39-2 at 100). Thus, Plaintiffs' allegations simply do not support an inference that Defendants knew or should have known that Plaintiffs intended to sell their shares immediately upon the opening of trading on May 31, 2011.

Accordingly, Count 2 of the Amended Complaint is dismissed.

**C. Negligence (against Body Central and Ms. Davis)**

Plaintiffs' claim for negligence in the third count of the Amended Complaint also fails to state a claim. As the Court has already ruled, any duty that Body Central or Ms. Davis owed to Plaintiffs to remove the restrictive stock legends is the statutory duty set forth in 6 *Del. C.* § 8-401. Thus, 6 *Del. C.* § 8-401 displaces any claim for negligence as to removal of the legends. *See* 6 *Del C.* § 1-103(b); *Clancy Sys. Int'l v. Salazar*, 177 P.3d 1235, 1236 (Col. 2008).

Plaintiffs argue that Ms. Davis' failure to provide information concerning the issuance of the opinion letter before the afternoon of May 31, 2011 falls outside the scope of 6 *Del. C.* § 8-401 and, therefore, the statute does not displace their claims for negligence at least as to Ms. Davis' failure to respond to their counsel's e-mails. (D.I. 39 at 11). Plaintiffs have not cited any Delaware authority for the proposition that Defendants owed Plaintiffs a duty of care to respond

---

> period from the date of [the lock-up agreement] to and including the 34th day following the expiration of the initial Lock-Up Period, [the shareholder] will give notice thereof to the Company and will not consummate any such action unless it has received written confirmation from the Company that the Lock-Up Period . . . has expired.

(D.I. 32-3 at 11). Thus, Plaintiffs were required to provide notice to the Company prior to selling their shares until June 15, 2011. (*Id.*; *see also* D.I. 32-5 at 2).

to e-mails before removing the restrictive legend. *See Travelers Cas. & Sur. Co. of Am. v. Bancorp Bank*, 691 F. Supp. 2d 531, 537 (D. Del. 2009) (holding that negligence was not displaced by UCC statutory provisions but nevertheless dismissing action for failure to state a claim because there was no Delaware authority establishing that the defendant owed the plaintiff a duty of care).

Accordingly, Count 3 of the Amended Complaint is dismissed.

**D. Equitable Fraud (against Body Central and Ms. Davis)**

In the fourth count of the Amended Complaint, plaintiffs assert a claim of equitable fraud against Body Central and Ms. Davis. Equitable fraud is broader than common law fraud. *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *13 (Del. Ch. Dec. 22, 2010). It "'includes all willful or intentional acts, omissions, and concealments which involve a breach in either legal or equitable duty, trust, or confidence, and are injurious to another, or by which an undue or unconscientious advantage over another is obtained.'" *Id.* (quoting *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 144 (Del. Ch. 2009)). The elements of equitable fraud are the same as those for common law fraud, except that plaintiff is not required to prove scienter. *Id.* (citing *Airborne Health, Inc.*, 984 A.2d at 144). A plaintiff claiming equitable fraud, however, "must sufficiently plead a special relationship between the parties or other special equities, such as some form of fiduciary relationship or other similar circumstances." *Id.* (citing *Airborne Health, Inc.*, 985 A.2d at 144).

Plaintiffs, for the first time in the answering brief, attempt to assert a special relationship based on Ms. Davis' fiduciary duty to shareholders as an officer and seek leave to amend again to add a breach of fiduciary duty claim against her. (D.I. 39 at 14; *see* D.I. 39-2). Turning first to

the breach of fiduciary duty claim, the Court will not grant leave to amend to add this claim because it is barred by *Malone v. Brincat*, 722 A.2d 5 (Del. 1998). In that case, the Delaware Supreme Court held that a corporate fiduciary may only be held liable for breach of a fiduciary duty for an omission or misleading disclosure in such instance if the corporate fiduciary "knowingly disseminate[s] false information." *Id.* at 9; *see Metro Commc'n. Corp. BVI v. Advanced Mobilecomm Tech. Inc.*, 854 A.2d 121, 157-58 (Del. Ch. 2004). "This level of proof is similar to, but even more stringent than, the level of scienter required for common law fraud." *Metro Commc'n.*, 854 A.2d at 158. As discussed in connection with the securities fraud claim below, Plaintiffs have not sufficiently alleged scienter. Accordingly, leave will not be granted to amend as the fiduciary duty claim Plaintiffs seek to assert fails to state a claim upon which relief can be granted.

With respect to the existing equitable fraud claim, that claim must also be dismissed. Delaware courts have held that a fiduciary cannot "be liable in damages for equitable fraud when no recovery would be available under a fiduciary duty theory." *See id.* at 160, 163.

Accordingly, Count 4 of the Amended Complaint is dismissed and leave will not be granted to amend to add a fiduciary duty claim.

**E. Conversion and Trover (against Body Central)**

In the fifth count of the Amended Complaint, plaintiffs assert a claim for conversion and trover against Body Central. Plaintiffs allege Body Central improperly exercised "dominion and control" over Plaintiffs' property in two ways. First, plaintiffs allege that Body Central "fail[ed] to reasonably and timely advise as to the manner in which Body Central intended to effectuate the necessary actions to remove the restrictive legends contained in the share certificates owned

by Plaintiffs." (D.I. 32 at ¶ 206). This allegation is the same allegation on which plaintiffs relied in their original complaint and which the Court concluded is insufficient to state a claim for conversion. (D.I. 1 at ¶ 110; D.I. 30 at 11).

Second, plaintiffs allege that Body Central exercised improper dominion and control over their shares by "failing to provide written confirmation that the lockup period expired on May 31, 2011, as required in Foley & Lardner's March 21, 2011 email." (D.I. 32 at ¶ 206). The record before the Court, however, contradicts this allegation. Ms. Davis e-mailed Plaintiffs' Counsel on May 23, 2011 and stated that "[u]nless certain specified events occur, the first day that stockholders will be able to sell shares is May 31, 2011." (D.I. 32-6 at 3). Plaintiffs' counsel understood that the lock-up had in fact expired when he wrote to Ms. Davis on May 31 requesting removal of the legends "[n]ow that the lock-up has expired." (D.I. 32-6 at 2). In any event, the issuance of the legal opinion authorizing removal of the restrictive legend from Mr. Kolber's shares on May 31 constitutes written confirmation that the lock-up had expired.[2] (D.I. 32-7).

Accordingly, Count 5 of the Amended Complaint is dismissed.

**F. Breach of Implied-in-Fact Contract (against Body Central)**

In the sixth count of the Amended Complaint, Plaintiffs assert a claim for breach of

---

[2] While citing to Foley & Lardner's March 21, 2011 e-mail as evidence that Body Central was required to confirm in writing that the lock-up period had expired, Plaintiffs ignore that the lock-up agreement required them to provide notice of their intention to sell their shares. (D.I. 32-3 at 11). This provision of the lock-up agreement cuts against Body Central's arguments that Plaintiffs were free to sell their shares once the lock-up period expired even before receiving the opinion authorizing removal of the legends, but the amended complaint and attached exhibits are devoid of any allegations or evidence demonstrating that Plaintiffs provided appropriate notice to Body Central that they intended to sell their shares.

implied-in-fact contract, alleging that Body Central, by its conduct in connection with the IPO and secondary offering, impliedly agreed to treat Plaintiffs in the same manner as the other insider selling shareholders in connection with the expiration of the lock-up period. In their answering brief, Plaintiffs do not address this claim, all but conceding that this claim should be dismissed because the Registration Rights Agreement dated October 1, 2006 preempts any contract implied-in-fact among Plaintiffs and Body Central. (D.I. 39 at 16). Plaintiffs instead seek leave to amend the complaint again to assert a claim for breach of the duty of good faith and fair dealing based on Body Central's failure to treat all parties to the Registration Rights Agreement equally in terms of their ability to be in a position to sell immediately upon the expiration of any new lock-up period. (*Id.*).

Under Delaware law, a claim for breach of the duty of good faith and fair dealing requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotation omitted).. This Court has already ruled that there was no "unreasonable delay" by Defendants because the Rule 144 letter was provided the same day it was requested by Plaintiffs. Thus, any leave to amend would be futile because the amendment fails to state a claim.

Accordingly, Count 6 of the Amended Complaint is dismissed and leave will not be granted to amend.

**G. Tortious Interference with Implied Contractual Relations (against Body Central)**

Plaintiffs assert a claim for tortious interference with implied contractual relations in the

seventh count of the Amended Complaint. They allege that they had an implied-in-fact contract with the other selling shareholders of Body Central by which they all agreed to treat each other "equally in terms of their ability to sell shares at the time immediately upon the expiration of any period of restriction on their sale of shares. (D.I. 32 at ¶ 220). They further allege that Body Central, through Ms. Davis, tortiously interfered with this implied-in-fact contract by not responding to Plaintiffs' counsel's e-mails prior to issuance of the Rule 144 letter. (*Id.* at ¶ 222).

As with Plaintiffs' other claim for tortious interference, the factual allegations fail to support the conclusory allegation that Ms. Davis knew Plaintiffs wanted to sell their shares immediately on May 31, 2011, or that she acted intentionally in not responding to the e-mails from Plaintiffs' counsel prior to the issuance of the Rule 144 letter.

In addition, Plaintiffs' tortious interference claim fails because the allegation of an implied-in-fact contract between Plaintiffs and the other selling shareholders is conclusory and not supported by the allegations. Plaintiffs fail to allege any specific facts that would support the elements of an implied-in-fact contract or establish the necessary meeting of the minds. Even assuming, *arguendo*, that the fact that the other selling shareholders "did not involve Plaintiffs in their concerted efforts to sell their shares" is evidence that the insiders breached their implied contracts with Plaintiffs, Plaintiffs fail to allege any intentional acts by Defendants to cause such alleged breach. *See Beard Research, Inc. v. Kates*, 8 A.3d 573, 605 (Del. Ch. 2010) (tortious interference requires "an intentional act that is a significant factor in causing the breach of such contract").

Accordingly, Count 7 of the Amended Complaint is dismissed.

**H. Securities Fraud (against Body Central and Ms. Davis)**

Plaintiffs assert a claim against Body Central and Ms. Davis for securities fraud under Section 10(b) of the Securities Exchange Act of 1934. To state claim for securities fraud under Section 10(b), plaintiffs must allege:

> (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the market cases) as "transaction causation"; (5) economic loss; and (6) "loss causation," *i.e.*, a causal connection between the material misrepresentation and the loss.

*In re Aetna, Inc., Sec. Litig.*, 617 F.3d 272, 277 (3d Cir. 2010) (quoting *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007)). Federal securities fraud claims are governed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *Id.* The PSLRA "imposes two exacting and distinct pleading requirements for securities fraud actions." *Id.* First, "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Second, "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2).

Plaintiffs' securities fraud claim fails for at least two reasons. First, Plaintiffs do not allege an actionable material misrepresentation or omission. They assert that Ms. Davis had a duty to disclose based on an allegedly incomplete disclosure in her May 23, 2011 e-mail. This allegation, however, is insufficient under the law. *See Winer Family Trust v. Queen*, 503 F.3d 319, 330 (3d Cir. 2007) ("Liability may exist under Rule 10b-5 for misleading or untrue

statements, but not for statements that are simply incomplete.").[3] Plaintiffs also cannot allege any duty to respond to Plaintiffs' counsel's e-mails prior to the issuance of the Rule 144 letter. "As a general matter, an affirmative duty arises only when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete, or misleading prior disclosure." *Winer Family Trust*, 503 F.3d at 329. Plaintiffs have not alleged insider trading nor they have they identified any inaccurate, incomplete, or misleading prior disclosure. This Court has already ruled that 6 *Del. C.* § 8-401 does not create a duty to respond to e-mails prior to registration of a transfer. Even if it did, failure to do so would not be securities fraud.

Second, Plaintiffs do not allege with particularity facts giving rise to a strong inference of scienter. The "inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). A securities fraud claim survives dismissal "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. The Court has already ruled that the factual allegations do not support an inference that Ms. Davis acted intentionally in not responding to Plaintiffs' counsel's e-mails.

Moreover, the facts Plaintiffs allege to support an inference of scienter have compelling opposing inferences. Plaintiffs primarily complain that Ms. Davis met with the insiders to discuss coordinating sale of stock at the expiration of the lock-up period pursuant to a Rule 10b5-1 Sales Plan, that certain insiders worked to convince another insider to enter into such a plan,

---

[3] Plaintiffs also fail to allege how anything in the May 23 e-mail, which answered both questions contained in Plaintiffs' counsel's May 19 e-mail, was incomplete.

that the insiders ultimately entered into Rule10b5-1 Sales Plans, and that no one from Body Central told Plaintiffs about the Rule 10b5-1 Sales Plans or invited Plaintiffs to any of the meetings. (D.I. 32 at ¶¶ 58-65). The reasonable inference is that Kolber was not invited to or informed of the meetings because he was not an insider and, therefore, would not be a party to any such sales plans.

Accordingly, Count 8 of the Amended Complaint is dismissed.

**I. Legal Fraud (against Body Central and Ms. Davis)**

In the ninth count of the Amended Complaint, Plaintiffs assert a claim for legal fraud against Body Central and Ms. Davis. As with a claim for securities fraud, an omission of a material fact is only actionable if the defendant has an affirmative disclosure duty. *See Corporate Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, 2008 WL 963048, at *6 (Del. Ch. Apr. 10, 2008) ("[M]ere silence about facts material to another party is not fraud unless the party who remains silent has a duty to disclose those facts."). There was no duty for the Defendants to respond to Plaintiffs' counsels e-mails before the Rule 144 letter was issued. The Court also has already ruled that Ms. Davis' status as an officer did not create a fiduciary obligation to respond to the e-mails.

Accordingly, Count 9 of the Amended Complaint is dismissed.

**J. Respondeat Superior (against Body Central)**

Plaintiffs' claim against Body Central for respondeat superior must also be dismissed because, as discussed, the underlying claims against Ms. Davis in the first amended complaint fail to state a claim. *See Greco v. Univ. of Del.*, 619 A.2d 900, 903 (Del. 1993) ("[A] viable cause of action against the employee for negligence is a condition precedent to imputing

vicarious liability for such negligence to the employer pursuant to the theory of respondeat superior.").

Accordingly, Count 10 of the Amended Complaint is dismissed.

## III. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss the first amended complaint with prejudice. An appropriate order will be entered.